Syllabus.

THE SUPREME COUNCIL OF ROYAL TEMPLARS OF TEMPERANCE

*v.* ·

AMANDA A. CURD.

*Filed at Springfield September 27, 1884.*

1.  PRACTICE—*when objection to evidence should be specific.* Objections to evidence, or questions propounded, which might have been obviated, must be specifically made on the trial, or they can not be urged on appeal or error.

2.  CONTRACT—*rule of construction—taking words used, in their ordinary sense.* In seeking the intention of the parties to a written contract, the courts are not authorized to construe the words used otherwise than in accordance with their plain, natural and obvious meaning, unless, from a consideration of the entire evidence, it shall appear that the parties did not intend to so use them.

3.  LIFE INSURANCE—*application as part of contract, construed.* An application by a member of a temperance order for a beneficiary certificate in the nature of a life insurance policy, contained this clause: "I further agree, that should I, at any time, violate my pledge of total abstinence, or be suspended or expelled for a violation of any of the laws of the order, or for non-payment of dues, etc., then all rights which either myself, the person or persons named in certificate, my heirs, etc., may have upon the beneficiary fund of the order, shall be forfeited:" *Held*, that the application was a part of the contract of insurance, and obligatory upon the beneficiary named in the certificate, to whom payment was promised on the death of the member, and that the language was in the alternative, making either or any one of the causes named, a ground of forfeiture of all right of recovery upon the certificate.

4.  SAME—*certificate construed, as to conditions.* A beneficiary certificate given to a member of an order, witnessed that the member was entitled to certain rights and privileges of the order, and the same was issued upon the express condition that he should, while a member of the order, faithfully maintain his pledge of total abstinence, and comply with all the laws, rules, regulations and requirements of the order, otherwise it to be of no effect; and that in case he should die in good standing, the beneficiary named should be entitled to one dollar from each active member in good standing, not exceeding two thousand: *Held*, that as the requirements in the condition are used conjunctively, a compliance with all of them was necessary to a recovery, and that a violation of the pledge of total abstinence, alone, would bar a recovery by the beneficiary.

5.  So the words, "in case he is in good standing at the time of his decease, then the person or persons hereinafter named shall be entitled," etc., are not equivalent to saying that if he is not tried or convicted of violating his pledge,

etc. Good standing in a society not only implies that the party is a member thereof, but also that he has a good reputation therein. In such case, a violation of the pledge of total abstinence, even without a trial and conviction, forfeits the right of the beneficiary to recover the sum promised.

6. PAROL EVIDENCE—*of breach of condition of a contract of insurance.* In an action upon a contract of a temperance order or society to pay a certain sum to the beneficiary therein named, upon the decease of the member entering into the same, upon the express condition that he should faithfully keep his pledge of total abstinence, it is error to exclude parol evidence of his having violated such pledge before his death. In such case his trial and conviction by the order for such violation need not be shown in order to defeat a recovery.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Coles county; the Hon. J. W. WILKIN, Judge, presiding.

This was a suit brought by Amanda A. Curd, against the Supreme Council of Royal Templars of Temperance, to recover upon a certificate, in the nature of a policy of life insurance, issued by that order to the plaintiff's husband, and in which she was named as the beneficiary.

Mr. G. A. KELLAR, for the plaintiff in error.

Mr. JAMES A. CONNOLLY, and Messrs. DUNN & CONNOLLY, for the defendant in error.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Daniel Curd, on the 26th of November, 1881, presented to the Supreme Council of Royal Templars of Temperance, the following:

"*To the Supreme Council R. T. of T.:*

"I, Daniel Curd, having made application for membership in Veritas Council No. 2, Royal Templars of Temperance, do hereby agree that compliance on my part with all the laws, regulations and requirements which are or may be hereafter enacted by said order, is the express condition upon which

I am to be entitled to participate in the beneficiary fund of the order, and have and enjoy all the other privileges of said order. I certify that the answers made by me to the questions propounded by the medical examiner of this council, which are attached to this application and form a part thereof, are true. I further agree, that should I, at any time, violate my pledge of total abstinence, or be suspended or expelled for a violation of any of the laws of the order, or for non-payment of dues or beneficial assessments, or should I die in consequence of a duel, or by the hands of justice, or should I die by my own hand within one year from the date of my initiation, whether sane or insane, then all rights which either myself, the person or persons named in certificate, my heirs or legal representatives may have upon the beneficiary fund of the order, shall be forfeited. And I further agree to abide by the decision of the supreme medical examiner in his acceptance or rejection of this application.

"Dated at Charleston, county of Coles, State of Illinois, this 26th day of November, 1881.

(Signed.) DANIEL CURD, *Applicant.*"

Curd was admitted to membership, as asked, and thereupon, afterwards, on the 10th day of December, 1881, the Supreme Council of Royal Templars of Temperance issued and delivered to him the following, to-wit:

"*ROYAL TEMPLARS OF TEMPERANCE.*

HOPE, LOVE AND TRUTH.                    IN GOD WE TRUST.

BENEFICIARY CERTIFICATE.

"This certificate, issued by the authority of the Supreme Council Royal Templars of Temperance, witnesseth, that Bro. Daniel Curd, a member of Veritas Council No. 2, of Illinois, is entitled to all the rights and privileges guaranteed to active members of the order by our constitution and laws, and issued upon the express condition that he shall, while a member of said order, faithfully maintain his pledge of total abstinence,

and comply with all the laws, rules, regulations and requirements of said order,—otherwise it shall be of no effect. And in case he is in good standing at the time of his decease, then the person or persons hereinafter named shall be entitled to one dollar from each and every active member in good standing, not exceeding two thousand; or should he become totally disabled for life while a member of the order in good standing, so as to prevent his following his own or any other avocation, provided such disability did not arise from intemperance or any immoral conduct on his part, then, upon satisfactory proof of such total disability, he shall be entitled to one-half of the above mentioned amount, the remaining one-half to be paid at the time of his decease; and he now directs, that in case of his decease it be paid to Amanda A. Curd.

"In witness whereof, we have caused this to be signed by our supreme councilor and supreme secretary, and the seal of this supreme council attached, this 9th day of December, 1881.

{ Seal of Supreme Council. }

No. 12,551.

P. A. Ross,
*Supreme Secretary.*

CYRUS K. PORTER,
*Supreme Councilor.*

"Countersigned and the seal of the select council attached, this 10th day of December, 1881.

{ Seal of Select Council. }

J. I. BROWN, *R. Sec'y.*          S. M. McNUTT, *S. C.*"

On the 26th of June, 1882, charges were preferred against Curd, as follows:

"CHARLESTON, ILL., *June 26, 1882.*

"*To Veritas Council No. 2, R. T. of T.:*

"I, C. U. Dunbar, a member of Veritas Council No. 2, hereby charge Bro. Daniel Curd with violation of article 2, as more fully appears in the annexed specifications,—by being drunk on June 19–20; and I ask that a committee to investigate said charges be appointed.

C. U. DUNBAR."

The consideration of this by the council was indefinitely suspended, and on the 5th of July next following, before any action was taken by the council on the charge, Curd died.

The circuit court, on the trial, refused to allow questions to be answered, the effect of which would have been to prove that Curd had drank spirituous liquors in violation of his pledge. It is true, counsel now insist those questions were liable to certain specific objections,—some of them, in that they submitted a matter involving opinion as well as fact, to the jury, and others, in that the inquiry was not limited to liquors drank as a beverage. The record shows the objections to the questions were only general, specifying no particular ground, and the ruling of the court, we must assume, was on the objections as they were made. It is evident these specific objections could have been obviated by a change in the form of the question, and they should, therefore, to be availed of now, have been urged when the questions were propounded. It is quite apparent the contest on the trial was, whether the fact that Curd had drank spirituous liquors in violation of his pledge, as a beverage, was a complete defence to the cause of action, he having never been tried and convicted, and expelled from the order, or suspended from its privileges therefor, and the court, both in refusing questions to be answered, and in refusing to instruct the jury, ruled that it was not,—and this, in our opinion, is the only question that need now be considered.

The question here, as in other cases of contract, is to arrive at the intention of the parties, and we are not authorized, in striving to do so, to construe words otherwise than as conveying their plain, natural and obvious meaning, unless, from a consideration of the entire evidence, it shall appear this could not have been intended.

The first part of this contract,—the part obligatory upon the beneficiary,—is the application of Daniel Curd. It is plain and simple in its language, and can not be misunder-

stood. It contains this: "I further agree, that should I, at any time, violate my pledge of total abstinence, or be suspended or expelled,   *   *   *   then all rights which either myself, the person or persons named in certificate, my heirs or legal representatives may have upon the beneficiary fund of the order, shall be forfeited." The language is in the alternative,—either the one or the other of the causes specified shall forfeit all right of recovery upon the certificate. The certificate is the second part of the contract,—the part obligatory upon the council,—and it is thereby bound to pay to the beneficiary one dollar from each and every active member of the order in good standing, not exceeding two thousand, upon the express condition that Daniel Curd shall, while a member of said order, faithfully maintain his pledge of total abstinence, and comply with all laws, rules, regulations and requirements of said order, and that otherwise it shall be of no effect. Stopping here, there can not be the slightest ground for pretending that a violation of the pledge of total abstinence does not, of itself, forfeit all right of recovery upon the certificate. The words, "shall faithfully maintain his pledge of total abstinence, and comply with all the laws, rules, regulations and requirements of said order," are used conjunctively, and all these requirements are necessary to be observed to entitle the beneficiary to recover upon the certificate, and so it must follow the omission of either will bar a recovery. But the certificate proceeds, after the language quoted: "And in case he is in good standing at the time of his decease, then the person or persons hereinafter named shall be entitled," etc., and the argument upon behalf of defendant in error assumes that these words are equivalent to saying that if he is not tried and convicted of violating his pledge, etc. This assumption, we think, is not well founded. Good standing in a society not only implies that a party is a member of the society, but that he has a good reputation therein. In the present instance the words

19—111 Ill.

are to be construed with reference to the language of the application and the preceding language of the certificate, and when this is done they manifestly mean not only good reputation, but good conduct,—*i. e.,* freedom from a violation of the pledge of total abstinence, etc.   Had it been designed to make trial and conviction a condition precedent to forfeiture, we must presume that it would have been so said; but nowhere is language used that can fairly be construed to mean this.   The pledge contains this language: "I promise that I will not make, buy, sell, use, or give to others, as a beverage, any spirituous, fermented or distilled liquors, wine or cider," etc.   The violation of this pledge is cause for expulsion or suspension as a member, and it—not the expulsion or suspension, but the violation of the pledge,—is also a cause for forfeiture of rights and benefits under the certificate.   It is true, one of the clauses of the constitution of the order provides, that "if suspended, he forfeits all rights to the beneficiary fund;" but this is evidently inserted to repel a presumption that otherwise might arise from the peculiar language, that suspension, which is allowable instead of expulsion, as an act of grace, would condone the cause of forfeiture in respect of the beneficiary fund.

Construing this contract as the parties made it, we think the court below erred in excluding evidence to prove that Curd drank liquors in violation of his pledge, notwithstanding that he had not been tried and convicted therefor.   For this error the judgment is reversed and the cause remanded.

*Judgment reversed.*