| 88 | 89 |
| 92 | 365 |

| 88 | 89 |
| 106 | 89 |
| e109 | 350 |

## Supreme Council of the Royal League v. Louisa Moerschbaecher.

1. BENEFICIARY ASSOCIATIONS — *Violations of By-laws — Saloonkeeping.*—A member of a beneficiary association who, in violation of its by-laws, engages in the business of saloon-keeping, although his dues are regularly paid up to the time of his death, terminates all future beneficial rights under his certificate of membership.

Assumpsit, on a certificate of insurance.   Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1899.   Reversed.   Opinion filed March 12, 1900.

Statement.—Appellee is the widow of Peter Moerschbaecher, who became a member of the appellant order on November 18, 1890.   Moerschbaecher at the time of joining the order was a cigar dealer.   He afterward became, in addition to his business as cigar dealer, a saloonkeeper. He continued to pay his dues as a member of the order up to the date of his death, which occurred July 12, 1895.

Appellee was the beneficiary in the certificate issued to Peter Moerschbaecher.   Immediately upon his death appellee furnished to appellant proofs of death.   Appellant refused to pay the benefit provided in the certificate of membership for the reason that Moerschbaecher was a

saloonkeeper at the time of his death, which occupation was prohibited to beneficial members of appellant. No offer was made by appellant to return the dues and assessments paid by Moerschbaecher. Moerschbaecher at the time of his being examined for admission to the order, signed a printed document called a medical examiner's blank, which document contained a provision that should the said Moerschbaecher become engaged in the business of saloonkeeper his so doing should terminate all beneficial rights under the certificate. At the time of his admission to the order its by-laws provided that if any member of the order should become engaged in the employment of a saloonkeeper subsequent to his admission, the archion of the council to which the member belonged should cause a written notice to be "immediately mailed to the member, to the effect that his further continuance in such business or employment would forfeit all beneficial rights under his membership, and if he thereafter continues therein the archion shall at the next meeting declare him suspended in open council from any and all benefits of or interest in the Widows and Orphans' Fund."

After the membership certificate had been issued to Moerschbaecher, and before his death, an amendment to the by-laws was adopted, which is as follows:

"Section 3. All beneficial members of this order are prohibited from engaging in, or pursuing any of the occupations or employments enumerated in the preceding section of this law; and any member of the order who shall, after obtaining membership therein, become engaged in or pursue any business or employment enumerated in section 2 of this law, shall stand suspended from, and forfeit all interest in the Widows and Orphans' Benefit Fund, from and after the date of his engagement in such prohibited business; and no benefit or benefits shall be paid to the beneficiary or beneficiaries of any member on account of the death of such member occurring while he is engaged in any of the said enumerated employments."

The constitution of the order precluded any one engaged in the business of a saloonkeeper from becoming a member.

Moerschbaecher continued actively engaged as a saloon-

keeper from 1891 to the date of his death, July 12, 1895. The collector of the minor council, of which Moerschbaecher was a member, knew that he was engaged in that occupation. No proceedings for expulsion were ever taken against him, and his dues and assessments were paid promptly.

This suit was brought by appellee upon the benefit certificate issued to Moerschbaecher. The defense was based upon the foregoing facts, and was in effect that upon entering upon the business prescribed by the constitution of the order and the application for membership signed by the member, all rights under the benefit certificate ceased while a member was engaged in such business.

The cause was tried by the court, a jury having been waived, and the court found the issues for appellee, assessed her damages at $4,000, and entered judgment upon the finding. From that judgment this appeal is prosecuted.

MILLARD R. POWERS, attorney for appellant.

MONTGOMERY & HART, attorneys for appellee; WALTER M. HOWLAND, of counsel.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

The controlling question presented upon this appeal is whether the constitution and by-laws of the appellant order, together with the stipulation executed by the insured, operated to make the entering into the business of a saloonkeeper, at once suspend all beneficial rights under the certificate, or whether it was necessary that some affirmative action be taken by the order to suspend such rights. The constitution of the order precluded those engaged in the business of keeping a saloon from membership. The by-laws in force when the husband of appellee entered the order provided for action by the order to suspend the beneficial rights of any member who entered into the proscribed business after becoming a member. A later by-law which

we think operated in effect to repeal any part of the former by-law inconsistent with it, provided that the entering into the proscribed business should of itself operate to suspend beneficial rights. The husband of appellee took his membership subject to the by-laws existing when he joined the order, and also subject to such amendments thereto as might afterward be made. He was therefore subject to whatever modification of his rights under the membership certificate in question might be effected by the adopting of this latter by-law. Under the latter by-law his membership certificate ceased to create any beneficial rights during the period in which he remained in the proscribed business, and this without any action by the order. He was engaged in that business when he died.

The membership certificate in question reads in part as follows:

"Benefit Certificate. This certificate is issued to Peter Moerschbaecher, of Century Council, No. 73, Royal League, located at Chicago, Ill., upon evidence received from said council that he is a contributor to the Widows and Orphans' Benefit Fund of this order, and upon condition that the statements made by him in his application for membership in said council, the representations and agreements made and subscribed to by him in the medical examiner's blank, and the answers given and certified by him to the medical examiner, all of which representations, agreements, statements and answers are hereby declared to be warranties and are filed in the supreme scribe's office, be made a part of this contract, and upon condition that the said member complies in future with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund, all of which are also made a part of this contract," etc.

"I accept this certificate on the conditions named herein.
PETER MOERSCHBAECHER."

This subsequently adopted by-law became operative upon the membership rights of the insured. Niblack on Benefit Societies, Sec. 26, p. 59.

But aside from the operation of this by-law there is another, and, we think, unanswerable objection to the recov-

ery had upon this certificate of membership. The stipulation entered into by the insured upon joining the order, is an express contract that his membership certificate shall be of no force to create beneficial rights while he should be engaged in the business prohibited by the laws of the order. The stipulation is as follows:

" CHICAGO, Oct. 29, 1890.
    The undersigned, for the purpose of securing membership in the above named council of the Royal League, do hereby expressly warrant the truthfulness of each and all the statements made by me herein.  *  *  *  And I do further, for said purpose, represent and declare that I am not now engaged in any of the following occupations or employments:  *  *  *  saloonkeeper, or the manufacture and sale of intoxicating liquors.   And should I become actively engaged in any of the above enumerated occupations or employments, my so doing shall forfeit and absolutely terminate thereafter all rights, interests, payments, benefits or privileges of myself, my family, heirs, dependents or beneficiaries, without proceedings for expulsion, or otherwise, on the part of said association.   I do hereby certify that I have read the foregoing and fully understand the same."
                    PETER MOERSCHBAECHER."

The relation of such express stipulations or contracts to the provisions of the constitution and by-laws of like associations, has been the subject of judicial determination.  The current of authority is to the effect that special contracts voluntarily and fairly entered into by the insured will be enforced.   In other words, that while the law may in like cases relieve from a by-law which is unreasonable or oppressive, it will not relieve from the operation of a specific contract into which the member of the mutual association has freely and fairly entered with his co-members.   Niblack on Benefit Societies, Sec. 23, p. 50; Angell & Ames on Corp., Sec. 342; Supr. Council R. T. v. Curd, 111 Ill. 284; Hogins v. Sup. Council C. R. C., 76 Cal. 109.

In the California case the court held that where a member of an order agreed in his application " that a compliance with all the laws, regulations and requirements which now or hereafter may be enacted by our said order is the express

condition upon which I am to be entitled to participate in the mutual benefit life system," and where it appeared that the laws of the order forbade the use of alcoholic liquors as a beverage, and that after becoming a member the insured began such use of such liquors, that the contract governed, and that right under the membership thereby ceased by force of the contract, and without any expulsion or suspension by action of the order.

The only Illinois case which is in point, is Supr. Council R. T. v. Curd, *supra*, and we regard that decision as controlling. In that case the stipulation or contract entered into by the insured when applying for membership in the order was as follows:

"I, Daniel Curd, having made application for membership in Veritas Council No. 2, Royal Templars of Temperance, do hereby agree that compliance on my part with all the laws, regulations and requirements which are or may be hereafter enacted by said order, is the express condition upon which I am to be entitled to participate in the beneficiary fund of the order, and have and enjoy all the other privileges of said order. I certify that the answers made by me to the questions propounded by the medical examiner of this council, which are attached to this application and form a part thereof, are true. I further agree that should I, at any time, violate my pledge of total abstinence or be suspended or expelled for a violation of any of the laws of the order, or for non-payment of dues or beneficial assessments, or should I die in consequence of a duel, or by the hands of justice, or should I die by my own hand within one year from the date of my initiation, whether sane or insane, then all rights which either myself, the person or persons named in certificate, my heirs or legal representatives may have upon the beneficiary fund of the order, shall be forfeited. And I further agree to abide by the decision of the supreme medical examiner in his acceptance or rejection of this application.

"Dated at Charleston, County of Coles, State of Illinois, this 26th day of November, 1881.

Daniel Curd, Applicant."

The court held in effect that the violation of the agreement operated to suspend all rights of the insured without action by the order. The court said: "The violation of

this pledge is cause for expulsion or suspension as a member, and it—not the expulsion or suspension, but the violation of the pledge—is also a cause for forfeiture of rights and benefits under the certificate."

The simple question presented is, can a mutual association for insurance by express contract, freely and fairly entered into by the insured, impose conditions which shall govern the right to benefits under the membership. If it can ever be done, we see no reason why the plain terms of this agreement should not here control. To hold otherwise would be to deprive the members of this association of the clear right to the protection offered them by the terms of their agreement with the insured. We are of opinion that under the express provisions of the stipulation contained in the application of the insured for his membership, the entering into the business of saloonkeeper operated of itself to suspend all rights under the membership certificate while he was engaged in such business. The insured having died while engaged in the prohibited occupation, no recovery can be had by his beneficiary under the terms of the insurance contract, which consists of the membership certificate, the contract of application, and the constitution and by-laws of the association.

Nor do we regard the question of waiver as having any application.

Whether the entering into the prohibited business operated to at once terminate all future beneficial rights under the certificate of membership, or merely to suspend such rights during the period of the engagement in the business, in either case the payment of dues and assessments could hardly be held to operate as relieving the insured from the provisions of the constitution and by-laws of the order and from the terms of his own agreement. The provision of the amended by-law is, that " no benefit or benefits shall be paid to the beneficiary or beneficiaries of any member on account of the death of such member occurring while he is engaged in any of the said enumerated employments."

Construing the effect of these laws and the contract most

favorably for the insured, it would amount to a permission to remain a member, by payment of dues and assessments, during the engagement in the prohibited business, but with all beneficial rights suspended during such engagement, and would leave the member at liberty to abandon the business and again become entitled to the beneficial rights. But whatever other rights in the society might be enjoyed during such engagement in the proscribed business, and whatever privilege might be retained of again obtaining full beneficial rights by leaving the business, yet the payment of dues and assessments by the member and the acceptance of them by the order, could not, we think, be held to nullify the express contract that "no benefit or benefits shall be paid to the beneficiary or beneficiaries of any member on account of the death of such member occurring while he is engaged in any of the said enumerated employments."

We are of opinion that upon the uncontroverted facts of this case there can be no recovery.

The judgment is reversed.